PLATT (LELAND v.). See Case No. 8,235.

---

## Case No. 11,218.

PLATT v. McCLURE et al.

[3 Woodb. & M. 151.] [1]

Circuit Court, D. Maine. May Term, 1847.

UNRECORDED MORTGAGE—POWER TO SELL—INJUNCTION.

1. A temporary injunction will be granted against the sale of mortgaged premises under a power to sell in the conveyance, if the assignee of the mortgagor bought in ignorance of the existence of such a power and the mortgage containing it was not recorded.

2. But he will be allowed time only to raise the mortgage money now, instead of the end of three years, unless he alleges and proves fraud in the transaction by both parties to it.

3. Such a power to sell in a mortgage is legal, but has been questioned in some places and in others held to be illegal, and is not so common here as to raise a presumption of its existence when the deed has not been seen.

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

This was a bill filed May 22, 1847, praying for an injunction against the respondent. But a discontinuance has been since entered as to Amory S. Houghton. The injunction desired was against the sale of a certain tract of land situated in Cambridge, in this state, which had been advertised by David McClure, under a power to sell inserted in a mortgage of the premises. The bill averred, that one Dallinger was the owner of these premises and conveyed the same to Adam Hoit. That Hoit executed a mortgage of them to McClure on the 14th of May, 1846, to secure an alleged debt of $3,000. That subsequently, on the same day, Hoit conveyed the equity of redemption in the premises to the plaintiff [Samuel Platt] for the sum of $10,000, reciting that they were subject to two mortgages, one just described for $3,000, and one executed April 1, 1844, to W. Richardson, for $2,500. That the plaintiff supposed they were mortgages in the usual form, and that the premises could not be foreclosed if the money was paid at any time within three years; whereas, in fact, a power to sell after one year was inserted in the last of them; and, on the 20th May, 1847, notice of sale within 30 days had been advertised by the respondent. The bill then averred, that the interest in the premises when the mortgage was executed was in Dallinger; and that the deeds to Hoit, as well as to McClure, were fraudulent and made to defraud Dallinger's creditors, as D. soon after petitioned for the benefit of the insolvent law. That the sale to the plaintiff being first contracted by D., and known to Hoit and McClure, was valid, and to be preferred to the mortgage. That if the mortgage was valid, the plaintiff purchased under an impression it was in the usual form, without any power to sell in one year or to foreclose in less than three years. And the bill further prayed that the mortgage be adjudged void for fraud, and be surrendered, or the sale suspended for three years, and an account taken of the sum really due to be paid by the plaintiff in order to redeem the premises after that time. The plaintiff was a citizen of Pennsylvania, and alleged that he was likely to be much injured by an early sale of the premises at this time. There was another averment in the bill, of a mistake in the description of the premises, and against which relief was asked. Before the 30 days named in the advertisement of sale of the premises expired,—on the 23d of June, 1847, —the respondent filed his answer. The answer denied that any mistake existed in the description of the premises in the deed to the plaintiff, which materially affected the title or quantity of land, and averred the description to be the same as in the mortgage to the defendant. It next averred, that no representations had been made or authorized or known by the defendant as to the form of the mortgages. That Dallinger was owner of the land, subject to claims by one Rich-

ardson, for $2,500, and the $3,000 advanced by McClure, and sold the equity of redemption to the plaintiff, but that Dallinger did none of these acts with a view to conceal his estate or defraud his creditors. It further averred, that the plaintiff paid for the equity of redemption in Pennsylvania copper stock, and was not misled, nor was any mistake or fraud committed to injure him in the mortgages, and that the sale could now be made advantageously for him, the prices of land being high.

The case came on for hearing on the bill and answer, without any testimony, and for a temporary injunction till the pleadings were closed and evidence obtained and filed.

C. M. Ellis, for complainant.

G. Minot and B. F. Jacobs, for defendant.

WOODBURY, Circuit Justice. Though the plaintiff has an opportunity to give notice of his claim at the sale, it would be no bar to the sale if the defendants choose to proceed and could find bidders. Eden, Inj. 291. The result then would be new and further litigation with the purchaser, and hence that is to be avoided by a preventive relief, if a proper case is made out. 16 Ves. 267. An injunction temporary is sometimes proper, though the answer sets up title in the defendant and denies mistake or fraud. Eden, Inj. 118; Orr v. Littlefield [Case No. 10,590]. Thus, if the mischief in proceeding and disallowing the injunction is otherwise irremediable or incurable. 1 Glyn & J. 122; 4 Dow. 440. Such seems to be the sale in this case, and the expected delay in raising the money, beside the advantages in the meantime anticipated from the rise of the property in value. It may be replied to this in the present case, that the complainant could borrow the money and bid at the sale the full value, and that the excess over the mortgages would belong to him as owner of the equity. But the complainant belongs to a distant state, has not been able to visit there and obtain the money since the advertisement issued, and feels obliged to seek relief by longer delay, in a different mode. It seems to me, that on the bill and answer alone, he has made out no case for a permanent injunction. No defect is shown in the notice to sell, which may justify such an injunction against that sale. Drew. Inj. 342; 6 Madd. 10.

No fraud is admitted or to be fairly inferred, though some slight presumptions exist of unfairness in Dallinger in keeping his estate in others' names to some extent. But that is not shown to have been co-operated in by McClure, or to have affected the plaintiff as a creditor so that he can except to it. 2 Johns. 204; Poor v. Carleton [Case No. 11,272]. Nor is ground sufficient shown even for a temporary injunction,—beyond the peculiarity of the case.—showing that his damage may be great and without

remedy, unless he is now indulged with time sufficient to return home and obtain the money to buy in the premises at the sale, if postponed. He seems to lay the foundation for that in equity, in the fact of the large nominal consideration he is admitted by the answer to have paid, in the further admitted fact that he was not informed of the peculiar form of this mortgage, giving the respondent a power to sell, and hence, undoubtedly, purchased under a mistake as to its existence. This he testifies to in express terms, and it is not denied on the other side (though all design to cause a mistake is repelled), in another fact, not noticed at first by myself, that the mortgage containing this power was not recorded, so that he could see its peculiar form when he bought the equity, and in the consequent fact that no special negligence existed in him or his attorney (who was left to close up the business), in not seeing its peculiar form, and in the further fact, well known, that such powers are not customary in many sections of the country, though somewhat usual elsewhere; and, finally, in the fact that their legality has been denied in some places (4 Kent. Comm. 146, 148, note), and questioned in others, though not for all purposes and at all times void. 1 Pow., Mortg. 9, 10; Comyn, 603; 3 Pick. 483; 2 Metc. [Mass.] 29. Its operation seems equitable only where the land is worth but little more than the debt, and interest has not been punctually paid.

It is to be further considered, that this relief may enable him to avoid loss, and have some opportunity to prove fraud, if it existed, so that he can avail himself of it; and the court can prevent the delay from being injurious to the respondent, by requiring, as it has, a bond to be filed to secure the payment of the costs, and another bond to indemnify the defendant for any injury by delay in the depreciation of the property. See, on this practice, Hawes v. James, 1 Wils. Ch. 2; Drew. Inj. 339. As the money market is not straitened at this time, no other injury can happen to the respondent by a short delay. He is conceded to be a man of property; and if obliged, in the meantime, to borrow, could doubtless procure the amount at legal rates and without sacrifices. It is true that mortgagers and their grantees are bound in law to make payment at the day the debt falls due. But, it is equally true, that now not only equity permits a longer time on paying interest, but the law does it under express statutes in probably every state in the Union. It is also true, that the injury by this mistake or fraud, if either were perfected, would be only the trouble of raising the money to redeem the mortgages now instead of three years hence. But that may be very considerable to some men and very little to others; and the plaintiff being a stranger here, and not shown to possess much property, it will probably be so great to him as to justify the allowance of a short

time, on the terms and grounds before indicated, to visit his home and procure the money. Let the temporary injunction then issue till the adjourned session of this term, in September next.